# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| RICHARD LAWRENCE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DENBURY INC., KEVIN MEYERS, ANTHONY ABATE, CAROLINE ANGOORLY, JAMES CHAPMAN, CHRISTIAN KENDALL, LYNN PETERSON, BRETT WIGGS, and CINDY YEILDING,<br><br>　　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Richard Lawrence ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1.　　Plaintiff brings this action against Denbury, Inc. ("Denbury" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed acquisition of the Company by Exxon Mobil Corporation ("ExxonMobil").[1]

---

[1] The proposed business combination described herein is referred to as the "Proposed Transaction."

2. On July 13, 2023, Denbury entered into an Agreement and Plan of Merger (the "Merger Agreement") with ExxonMobil and its subsidiary EMPF Corporation. The Merger Agreement provides that Denbury stockholders will receive 0.840 of a share of ExxonMobil common stock for each Denbury common share in connection with the Propsoed Transaction.[2]

3. The Company's corporate directors subsequently authorized the September 29, 2023, filing of a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[3]

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

---

[2] Denbury stockholders will own approximately 1.08% of the combined company upon consummation of the Proposed Transaction.

[3] The Special Meeting at which stockholders are asked to approve Proposed Transaction currently is scheduled for October 31, 2023.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

**THE PARTIES**

9. Plaintiff is, and has been at all times relevant hereto, the owner of Denbury common stock.

10. Defendant Denbury is a Delaware corporation with its principal executive offices located at 5851 Legacy Circle, Suite 1200, Plano, Texas 75024. Denbury's shares trade on the New York Stock Exchange under the ticker symbol "DEN." Founded in 1951, Denbury is an independent energy company which operates in the Gulf Coast and Rocky Mountain regions with operations and assets focused on Carbon Capture, Utilization, and Storage ("CCUS") and Enhanced Oil Recovery ("EOR"). Denbury holds interests in various oil and natural gas properties located in Mississippi, Texas, and Louisiana in the Gulf Coast region and in Montana, North Dakota, and Wyoming in the Rocky Mountain region.

11. Defendant Kevin Meyers is and has been Chairman of the Board and a director of the Company at all times relevant hereto.

12. Defendant Anthony Abate is and has been a director of the Company at all times relevant hereto.

13. Defendant Caroline Angoorly is and has been a director of the Company at all times relevant hereto.

14. Defendant James Chapman is and has been a director of the Company at all times relevant hereto.

15. Defendant Christian Kendall is and has been President, Chief Executive Officer, and a director of the Company at all times relevant hereto.

16. Defendant Lynn Peterson is and has been a director of the Company at all times relevant hereto.

17. Defendant Brett Wiggs is and has been a director of the Company at all times relevant hereto.

18. Defendant Cindy Yeilding is and has been a director of the Company at all times relevant hereto.

19. Defendants identified in paragraphs 11-18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

20. On July 13, 2023, ExxonMobil announced in relevant part:

SPRING, Texas – Exxon Mobil Corporation (NYSE: XOM) today announced it has entered into a definitive agreement to acquire Denbury Inc. (NYSE: DEN), an experienced developer of carbon capture, utilization and storage (CCS)

4

solutions and enhanced oil recovery.  The acquisition is an all-stock transaction valued at $4.9 billion, or $89.45 per share based on ExxonMobil's closing price on July 12, 2023.  Under the terms of the agreement, Denbury shareholders will receive 0.84 shares of ExxonMobil for each Denbury share.

- Combined assets and capabilities further accelerate ExxonMobil's Low Carbon Solutions business and create an even more compelling customer decarbonization proposition

- Leading CCS network underpins ExxonMobil's commitment to low carbon value chains including CCS, hydrogen, ammonia, biofuels, and direct air capture

- Transaction synergies expected to enable more than 100 MTA of emissions reductions over time, driving strong growth and returns

"Acquiring Denbury reflects our determination to profitably grow our Low Carbon Solutions business by serving a range of hard-to-decarbonize industries with a comprehensive carbon capture and sequestration offering," said Darren Woods, Chairman and CEO.  "The breadth of Denbury's network, when added to ExxonMobil's decades of experience and capabilities in CCS, gives us the opportunity to play an even greater role in a thoughtful energy transition, as we continue to deliver on our commitment to provide the world with the vital energy and products it needs."

The transaction synergies are expected to drive strong growth and returns for ExxonMobil.  The acquisition of Denbury provides ExxonMobil with the largest owned and operated $CO_2$ pipeline network in the U.S. at 1,300 miles, including nearly 925 miles of $CO_2$ pipelines in Louisiana, Texas, and Mississippi – located within one of the largest U.S. markets for $CO_2$ emissions, as well as 10 strategically located onshore sequestration sites.  A cost-efficient transportation and storage system accelerates CCS deployment for ExxonMobil and third-party customers over the next decade and underpins multiple low carbon value chains including CCS, hydrogen, ammonia, biofuels, and direct air capture.

Chris Kendall, Denbury's President and Chief Executive Officer commented, "This transaction is a compelling opportunity for Denbury to join an admired global energy leader with a low-carbon focus, a robust balance sheet and a leading shareholder return program.  Over the last few years, Denbury has made significant progress executing our strategic plan, strengthening our enhanced oil recovery operations and capitalizing on our unrivaled infrastructure to accelerate the growth of our $CO_2$ transportation and storage business.  To build even further on this positive momentum, the Denbury Board of Directors and management team undertook a thorough review process and considered a number of alternatives to maximize long-term value.  Through this process, it became clear

that the transaction with ExxonMobil is in the best interests of our company, our shareholders, and all Denbury stakeholders. Importantly, given the significant capital and years of work required to fully develop our $CO_2$ business, ExxonMobil is the ideal partner with extensive resources and capabilities. The all-equity consideration will allow Denbury shareholders to participate in the upside of ExxonMobil's stock while benefitting from its strong capital return strategy. We look forward to bringing together our highly complementary cultures and teams to realize the long-term value and benefits of this combination."

"Denbury's advantaged $CO_2$ infrastructure provides significant opportunities to expand and accelerate ExxonMobil's low-carbon leadership across our Gulf Coast value chains," said Dan Ammann, President, ExxonMobil Low Carbon Solutions. "Once fully developed and optimized, this combination of assets and capabilities has the potential to profitably reduce emissions by more than 100 million metric tons per year in one of the highest-emitting regions of the U.S."

In addition to Denbury's carbon capture and storage assets, the acquisition includes Gulf Coast and Rocky Mountain oil and natural gas operations. These operations consist of proved reserves totaling over 200 million barrels of oil equivalent, with 47,000 oil-equivalent barrels per day of current production, providing immediate operating cash flow and near-term optionality for $CO_2$ offtake and execution of the CCS business.

The boards of directors of both companies have unanimously approved the transaction, which is subject to customary regulatory reviews and approvals. It is also subject to approval by Denbury shareholders. The transaction is expected to close in the fourth quarter of 2023.

**The Materially Incomplete and Misleading Proxy Statement**

21.     The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on September 29, 2023  The Proxy Statement, which recommends that Denbury stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the Company's financial forecasts; (b) the financial analyses underlying the fairness opinion provided by the Company's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan"), TPH & Co. ("TPH") and PJT Partners LP ("PJT Partners"); and (c) potential conflicts of interest faced by J.P. Morgan, TPH and Company insiders.

6

*Material Misrepresentations and/or Omissions Concerning the Company's Financial Forecasts*

22.     The Proxy Statement fails to disclose material information concerning the Company's financial forecasts, including the line items underlying forecasted EBITDA and Unlevered Free Cash Flow with respect to each of Denbury's "Strip Pricing Through 2027E Base Case," "Strip Pricing Through 2025E Base Case," "Consensus Pricing Through 2025E Base Case," "3-Year Historical Spot Price Base Case," "Strip Pricing Through 2027E CCUS Delay Case," "Strip Pricing Through 2025E CCUS Delay Case," "Consensus Pricing Through 2025E CCUS Delay Case," and "3-Year Historical Spot Price CCUS Delay Case" projections.

*Material Misrepresentations and/or Omissions Concerning the Financial Analyses Prepared by the Company's Financial Advisors.*

23.     The Proxy Statement fails to disclose material information concerning the financial analyses prepared by the Company's financial advisors.

24.     With respect to the *Sum-of-the-Parts – Selected Public Trading Multiples* analysis for the Company's EOR and CCUS businesses performed by J.P. Morgan, the Proxy Statement fails to disclose: (a) the individual multiples and financial metrics for each of the selected companies analyzed by the financial advisor; (b) the fiscal year ending December 31, 2023 EBITDA for Denbury's EOR business; and (c) the fiscal year ending December 31, 2026 revenue for Denbury's CCUS business.

25.     With respect to *Sum-of-the-Parts – Discounted Cash Flow Analysis* performed by J.P. Morgan, the Proxy Statement fails to disclose: (a) the respective unlevered free cash flows that each of Denbury's EOR and CCUS businesses was forecasted to generate during the second half of fiscal year 2023 through the end of fiscal year 2030; and (b) the terminal year

7

unlevered free cash flows for Denbury's EOR and CCUS businesses and the respective terminal values.

26. With respect to the *Selected Public Companies Trading Analysis* for the Company's EOR and CCUS businesses performed by TPH, the Proxy Statement fails to disclose: (a) the individual financial metrics for each of the selected companies analyzed by the financial advisor; (b) the estimated 2023 EBITDA of Denbury's EOR business; (c) the estimated 2026 revenue of the Company's CCUS business; (d) Denbury's net debt; and (e) the Company's fully diluted outstanding shares.

27. With respect to *Discounted Cash Flow Analysis* performed by TPH, the Proxy Statement fails to disclose: (a) the respective unlevered free cash flows expected to be generated by each of Denbury's EOR and CCUS businesses, based on the Strip Pricing through 2027E Base Case and the Strip Pricing through 2025E Base Case, used in the analysis; (b) the estimated terminal value at the end of fiscal year 2029 of the applicable business; (c) Denbury's net debt; and (d) the Company's fully diluted outstanding shares.

28. With respect to the *Selected Comparable Company Analysis – Sum-of-the-Parts* for the Company's EOR and CCUS businesses performed by PJT Partners, the Proxy Statement fails to disclose: (a) the individual multiples and financial metrics for each of the selected companies analyzed by the financial advisor; (b) the calendar year 2023 and 2024 EBITDAX for Denbury's EOR business; and (c) the calendar year 2026 revenue and EBITDA for Denbury's CCUS business.

29. With respect to the *Select Precedent Corporate Acquisitions Analysis* performed by PJT Partners, the Proxy Statement fails to disclose: (a) the individual multiples and financial metrics for each of the selected transactions analyzed by the financial advisor; (b) the estimated

8

EBITDAX for calendar year 2023 for Denbury's EOR line of business; and (c) the estimated EBITDA for calendar year 2026 for Denbury's CCUS line of business.

30. With respect to the *Discounted Cash Flow Analysis* performed by PJT Partners, the Proxy Statement fails to disclose: (a) the respective unlevered free cash flows for each of Denbury's EOR and CCUS lines of businesses used in the sum-of-the-parts valuation; (b) the respective terminal values; (c) Denbury's net debt; and (d) the Company's fully diluted outstanding shares.

***Material Misrepresentations and/or Omissions Concerning J.P. Morgan's, TPH's and Company Insiders' Potential Conflicts of Interest***

31. The Proxy Statement fails to disclose material information concerning J.P. Morgan's and TPH's potential conflicts of interest, including the amount of compensation each expects to receive in connection with the Proposed Transaction, and how much of that compensation is contingent upon the closing thereof.

32. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by Company insiders, including whether any members of Company management have secured positions with the combined company.

33. The Proxy Statement further fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between ExxonMobil and Denbury's executive officers, including who participated in all such communications, when they occurred and their content.

34. The Proxy Statement also fails to disclose whether any of ExxonMobil's proposals or indications of interest mentioned management retention in the combined company

9

following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

35. The omission of the above-referenced information renders statements in the "Certain Denbury Unaudited Prospective Financial Information," "Opinions of Denbury's Financial Advisors," "Background of the Merger," and "Interests of Denbury's Directors and Executive Officers in the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

36. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Denbury**

37. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

38. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Denbury is liable as the issuer of these statements.

39. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual

Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

40. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

41. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

42. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

43. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

44. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

45. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of Denbury within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Denbury and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

48. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the transactions giving rise to the violations as alleged herein and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

49. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: October 5, 2023      **LONG LAW, LLC**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@LongLawDE.com

*Attorneys for Plaintiff*